IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Elizabeth Brown, | ) | Civil Action No. 8:11-03151-RBH-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In March 2007, Plaintiff filed an application for DIB, alleging an onset of disability date of June 15, 2005.  [R. 103–05.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 79–87, 94–95.]  Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 97], and on March 10, 2009, ALJ Glen  H. Watkins conducted a de novo hearing on Plaintiff's claim [R. 42–72].

The ALJ issued a decision on May 7, 2009—and an amended decision on May 8, 2009, correcting the last date insured and the date of the hearing—finding Plaintiff not

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

disabled under the Social Security Act ("the Act").  [R. 27, 31–41.]  At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on June 30, 2008 [R. 27] and that she had not engaged in substantial gainful activity from her alleged onset date of June 15, 2005 through her date last insured [R. 33, Finding 2].  At Step 2, the ALJ found Plaintiff had the following severe combination of impairments:  Crohn's disease, depression, and an adjustment disorder.  [R. 33, Finding 3.]  The ALJ also determined that Plaintiff's neck discomfort following a car accident was a nonsevere impairment because the neck pain was "clearly incidental to her car accident and only temporary."  [R. 34.]  At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart A, Appendix 1.  [R. 34, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC"):

> I find that, from her alleged onset date through her date last insured, the claimant had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand and walk for approximately 6 hours in a regular 8 hour workday, with the claimant being limited to simple, routine repetitive tasks and needing 3 or 4 unscheduled bathroom breaks per day, for up to 5 minutes each.

[R. 35, Finding 5.]  Based on this RFC, the ALJ determined at Step 4 that Plaintiff was capable of performing her past relevant work in industrial cleaning.  [R. 40, Finding 6.]  Accordingly, the ALJ concluded Plaintiff was not under a disability, as defined by the Act, at any time from her alleged onset date through her date last insured.  [R. 41, Finding 7.]

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

Plaintiff requested Appeals Council review of the ALJ's decision, and on February 19, 2010, the Appeals Council notified Plaintiff that it had granted the request for review. [R. 12–15.] The notice indicated the Appeals Council planned to issue a decision finding Plaintiff not entitled to benefits because there were a significant number of jobs in the national economy Plaintiff could perform, but the Appeals Council also stated it would consider any comments or new material evidence Plaintiff submitted within 30 days from the date of the notice.  [R. 13.]  Plaintiff submitted additional evidence consisting of progress notes from Paul Frassinelli, M.D., dated November 7, 2008 to March 23, 2010 and April 13, 2010 to May 11, 2010; medical records from David Wortham, M.D., dated December 17, 2008 to February 4, 2010; and medical records from the Anderson Area Medical Center dated November 17, 2000 to March 19, 2010.  [R. 4, 8.]

The Appeals Council issued its decision on July 23, 2010, adopting the ALJ's conclusion that Plaintiff was not disabled. [R. 4–8.] The Appeals Council agreed with the ALJ's findings under Steps 1, 2, and 3 of the sequential evaluation but disagreed with the ALJ's finding that Plaintiff last met the insured status requirements on June 30, 2008, concluding the record showed Plaintiff last met the insured requirements on September 30, 2008. [R. 4–5.] The Appeals Council also agreed with the ALJ's RFC assessment, finding that, although the ALJ's decision addressed only the period through June 30, 2008, no evidence in the record warranted a more restrictive RFC assessment through September 30, 2008.[3] [R. 5.]  However, the Appeals Council disagreed with the ALJ's conclusion that

---

[3] The Appeals Council also adopted the ALJ's findings regarding Plaintiff's subjective complaints of pain and the ALJ's conclusions regarding the degree to which Plaintiff's mental impairment affected her activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation. [R. 5.]

Plaintiff was capable of performing her past relevant work as an industrial cleaner. [*Id.*] The Appeals Council found an individual with Plaintiff's vocational factors and RFC is not disabled within the framework of Rule 202.18 of the Medical-Vocational Guidelines if there are a significant number of jobs in the national economy the individual could perform. [*Id.*] The Appeals Council noted the vocational expert's testimony from the hearing that there were a significant number of jobs in the national economy that Plaintiff could perform and concluded Plaintiff was not disabled. [R. 5–6, 7.]

On September 17, 2010, Plaintiff filed an action for judicial review in this Court. [*See* R. 480, Case No. 8:10-cv-2434-RBH.] On May 3, 2011, the Commissioner moved to remand the case because the Appeals Council, before issuing its unfavorable decision, had not considered additional medical evidence provided by Plaintiff. [*See* R. 477, 480.] On May 24, 2011, the District Court granted the Commissioner's unopposed motion to remand and directed the Commissioner, upon remand, to consider and explain the weight given to the additional medical opinion evidence Plaintiff submitted to the Appeals Council. [*Id.*]

On September 21, 2011, the Appeals Council issued another unfavorable decision. [R. 470–73.] In this decision, the Appeals Council stated it had considered additional medical opinion evidence, including a medical source statement from Dr. Wortham dated September 18, 2009 and treating source opinion and medical records from Dr. Wadee dated February 3, 2010. [R. 470.] The Appeals Council concluded that

> these opinions do not impact the denial decision in any significant way as they are dated after the date claimant was last insured and the opinions are inconsistent with the overall, objective medical evidence in the record that indicates the claimant was still able to perform a reduced range of light work

4

during the entire period at issue (June 15, 2005, the date the claimant stated she became unable to work, to September 30, 2008, the claimant's date last insured).  The Appeals Council therefore, grants these opinions little evidentiary weight.

[R. 470.]  The Appeals Council also made the following findings:

1.    The claimant met the special earnings requirements of the Act on June 15, 2005, the date the claimant stated she became unable to work and met them through September 30, 2008.

2.    The claimant has not engaged in substantial gainful activity since June 15, 2005, the alleged date of disability.

3.    The claimant has the following severe impairments: Crohn's disease, depression and an adjustment disorder, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

4.    The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: she could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for approximately 6 hours in a regular 8 hour workday, and was limited to simple, routine repetitive tasks and needs 3 or 4 unscheduled bathroom breaks per day, for up to 5 minutes each.  In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the light exertional level.

5.    The claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision.[4]

---

[4]The Appeals Council noted that it had considered Plaintiff's subjective complaints and adopted the ALJ's conclusions as to Plaintiff's subjective complaints.  [R. 471.]

5

6.    The claimant is unable to perform past relevant work because they required more abilities than are included in the established residual functional capacity.

7.    The claimant was 30 years old on the date last insured, which is defined as a younger individual and has a limited or less education. The claimant's past relevant work is semi-skilled.  The issue of transferability of work skills is not material in view of the claimant's age and residual functional capacity.

8.    Based on the claimant's residual functional capacity, age, education, and work experience, 20 CFR 404.1569 and Rule 202.18, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, are used as a framework for finding the claimant not disabled (20 CFR 404.1520(f) and 416.920(f)).

9.    The claimant is not disabled as defined in the Social Security Act at any time through September 30, 2008, her date last insured.

[R. 471–72.]

Plaintiff filed this action for judicial review on November 18, 2011.  [Doc. 1.]  For purposes of this action, the Appeals Council's September 21, 2011 decision is the Commissioner's final administrative decision.   [R. 467; *see* 20 C.F.R. §§ 404.981, 422.210(a).]

## THE PARTIES' POSITIONS

Plaintiff contends the following errors require reversal:

1.    the Appeals Council improperly weighed the medical opinions of Dr. Wortham and Dr. Wadee [Doc. 14 at 18–22; Doc. 20 at 1–6];

2.    the ALJ improperly evaluated Plaintiff's credibility by cherry picking and mischaracterizing evidence [Doc. 14 at 23–30; Doc. 20 at 6–9]; and

3.    the Appeals Council failed to provide adequate support for its RFC findings [Doc. 14 at 30–32; Doc. 20 at 9–12].

6

Plaintiff requests that the Court reverse the decision of the Commissioner and award benefits or, in the alternative, remand for further proceedings.  [Doc. 14 at 32; Doc. 20 at 12–14.]

The Commissioner contends the decision is supported by substantial evidence, specifically arguing the Appeals Council properly

1.  considered the opinions of Drs. Wortham and Wadee and found they were entitled to little evidentiary weight [Doc. 18 at 13–16];

2.  considered and adopted the ALJ's conclusion that Plaintiff's statements concerning subjective complaints were not entirely credible [*id.* at 16–20]; and

3.  considered and adopted the ALJ's conclusion that Plaintiff retained the RFC to perform a range of light exertional work [*id.* at 20–22].

The Commissioner also contends that an award of benefits by the Court would be inappropriate because it would require the Court to assume responsibilities specifically entrusted to the Commissioner.  [*Id.* at 22–23.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning

7

mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the

8

cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new

9

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

>    In contrast, sentence six provides:

> >    The court may . . . at any time order additional evidence to be
> >    taken before the Commissioner of Social Security, but only
> >    upon a showing that there is new evidence which is material
> >    and that there is good cause for the failure to incorporate such
> >    evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been
superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the
requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*,
*Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No.
TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is

---

2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A.    ***Substantial Gainful Activity***

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

12

**B.**    ***Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.**    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases

---

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th

16

Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

18

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

**VI.    Credibility**

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

<u>**APPLICATION AND ANALYSIS**</u>

**Brief Medical History**

In July 2005, Plaintiff was voluntarily admitted to Anderson Area Medical Center for psychiatric services after she cut her left wrist.  [R. 347–61.]  Plaintiff stated she cut herself when her mother-in-law discovered Plaintiff was having an affair over the Internet; Plaintiff reported that she did not care if she lived or died because her family now hated her. [R. 350–51.]  After two days, where her wound was treated and she received medication

20

and a psychiatric evaluation, Plaintiff was discharged against medical advice.[8]  [R. 351.] Her final diagnoses included a diagnosis of adjustment disorder with mixed features.  [*Id.*]

In September and October 2006, Plaintiff complained of pelvic pain, rectal bleeding, frequent vomiting, and weight loss.  [R 178, 311–15.]  After a colonoscopy and x-rays, gastroenterologist David Wortham, M.D., diagnosed Crohn's disease involving the colon and small bowel, iron deficiency anemia, and some small ovarian cysts.  [R. 166, 229–31, 233.]  Dr. Wortham prescribed medications and advised Plaintiff to return for follow-up treatment.  [R. 166, 233.]  In November 2006, Plaintiff reported she was "[d]oing symptomatically OK" with Crohn's but that her antidepressant was not working well. [R. 177.]

In February 2007, Plaintiff reported to her physician[9] that she had vomited four times that day and had one loose stool during the night.  [R. 176.]  Plaintiff indicated her Crohn's had otherwise been under good control, she was not that depressed, and working had helped her.  [*Id.*]  Her physician found that her situational depression had improved and her Crohn's was stable.  [*Id.*]

In April 2007, Plaintiff's Crohn's was "under relatively good control," but Plaintiff was having frequent, heavy menstrual cycles.  [R. 211.]  An ultrasound showed large ovarian cysts, and her physician prescribed an oral contraceptive to regulate the bleeding. [R. 210–11, 214–15.]  Also in April 2007, state agency medical consultants reviewed the

---

[8] The discharge summary states, "The patient was recommended to pursue treatment for further emotional stability, titration of the medication, monitoring of the tolerability as well as to arrange an aftercare appointment, however, insisted on discharge[], and she is discharged from 8 south against medical advice." [R. 351.]

[9] Plaintiff received treatment at the Anderson Free Clinic, where she saw several physicians.  [*See, e.g.*, R. 176–83.]  At her February 7, 2007 visit, she saw Dr. Nathan Bradford.  [R. 176.]

record and assessed Plaintiff's impairments. [R. 189–204.] Frank Ferrell, M.D., found that Plaintiff's Crohn's was medically controlled because treatment records showed Plaintiff's weight had stabilized and she no longer had significant symptoms; Dr. Ferrell also opined Plaintiff's iron deficiency anemia was medically controlled. [R.189.] Accordingly, Dr. Ferrell concluded Plaintiff did not have any severe impairments. [*Id.*] Psychologist Lisa Varner, Ph.D., noted that Plaintiff did not allege any mental impairment, and she did not see a mental health care professional. [R. 203.] Dr. Varner indicated that Plaintiff had a medically determinable mental impairment—situational depression—that was nonsevere, causing mild restriction of daily activities, mild difficulty in maintaining social functioning, and no difficulty in maintaining concentration, persistence, or pace and no episodes of decompensation. [R. 191, 194, 201.]

In May 2007, Plaintiff reported at her gynecology follow up that she was having problems with her Crohn's disease. [R. 210.] Plaintiff saw Dr. Wortham and reported vomiting for two weeks and increased diarrhea. [R. 212.] Plaintiff indicated she had stopped taking the medication Azulfidine four times a day because it made her groggy and, instead, was taking it twice a day. [*Id.*] Dr. Wortham asked her to take Azulfidine up to eight tablets a day in a divided dose and instructed her on the problems associated with not taking her medications properly. [*Id.*]

A June 2007 CT scan showed thickening of the entire colon, indicative of wide-spread Crohn's disease. [R. 222–23.] Also in June 2007, Dale Van Slooten, M.D., another state agency physician, reviewed the record and concluded that Plaintiff did not have any severe physical impairments. [R. 217.] Dr. Van Slooten noted the record

showed a recent flare-up but that Plaintiff's Crohn's was medically controlled and that Plaintiff's iron deficiency anemia was medically controlled.  [*Id.*]

On follow up in October 2007, Dr. Wortham noted Plaintiff was taking Azulfidine and was also receiving Remicade infusions.  [R. 364.]  Plaintiff reported that she sometimes had lower abdominal pain, but Dr. Wortham opined that, overall, Plaintiff was doing much better than before.  [*Id.*]  Also in October 2007, Plaintiff saw internist Charles Wadee, M.D., for throat pain, headaches, and difficulty breathing.  [R. 500–01.]  Dr. Wadee diagnosed sinusitis and bronchitis and prescribed medications.  [R. 501.]

In November 2007, a colonoscopy showed minimally active Crohn's disease. [R. 362–63.]  Dr. Wortham observed that Plaintiff's Crohn's was "not nearly as active as previously seen" but was "[m]inimally active . . . and clearly responsive to treatment." [R. 362.]   He advised Plaintiff to continue Remicade.  [*Id.*]  Later in November 2007, Plaintiff went to the ER after fainting.  [R. 320–26.]  She reported that her Crohn's had been under good control, and although she always had diarrhea, she was not passing any blood and had no recent abdominal problems.  [R. 320.]  All testing was normal and the etiology of Plaintiff's fainting was unclear.  [R. 321.]

In January 2008, Plaintiff reported to Dr. Wortham that she had  to stop a Remicade infusion due to an allergic reaction, and she requested Dr. Wortham to prescribe pain medication.  [R. 365.] Dr. Wortham prescribed Imuran, as an alternative to Remicade, and Vicodin.  [*Id.*]  The following month, a CT scan showed "considerable improvement" in the thickening of Plaintiff's colon.  [R. 224–25.]

On follow up in March 2008, Plaintiff reported that she had stopped taking Imuran after two weeks due to headaches and that she was having frequent diarrhea.  [R. 366.]

Dr. Wortham noted that treatment options were limited in light of her intolerance to Remicade and Imuran. [*Id.*] Dr. Wortham encouraged Plaintiff to stop smoking as a key to her overall health and in treating her Crohn's. [*Id.*] Also in March 2008, Plaintiff saw Dr. Wadee and her chief complaint was headaches; Dr. Wadee assessed Plaintiff with depression and Crohn's disease and prescribed Cymbalta. [R. 496.] Late that month, Plaintiff went to the ER for generalized weakness, lower abdominal pain, and increased bowel movements. [R. 245–47.] A CT scan showed thickening of Plaintiff's colon walls, consistent with colitis that had markedly progressed since the February 2008 exam. [R. 256.] Dr. Wadee, the ER physician, treated Plaintiff for colitis, dehydration, low sodium levels, an electrolyte imbalance, and iron deficiency anemia. [R. 246.]

In April 2008, Dr. Wadee assessed Plaintiff with Crohn's disease, colitis, depression, and iron deficiency anemia. [R. 494.] On follow up in April and May 2008, Dr. Wortham adjusted Plaintiff's medications. [R. 367–68.] On follow up in July 2008, Dr. Wortham indicated that, overall, Plaintiff was improving and her Crohn's was clinically stable. [R. 369.] In September 2008, Plaintiff reported persistent pain and diarrhea but no rectal bleeding. [R. 227.] Dr. Wortham noted that Plaintiff had made several requests for pain medication, and while he prescribed Vicodin, he advised Plaintiff he would not supply her with any more[10] and further advised her not to take Vicodin as extensively as she had been. [*Id.*] Dr. Wortham observed Plaintiff had not stopped smoking, advised her that smoking cessation would be "critical for longterm care of her Crohn's," and noted she would need smoking cessation help. [*Id.*] A colonoscopy performed later in September

---

[10] However, Dr. Wortham subsequently provided several prescriptions for pain medication. [*See, e.g.*, R. 457–58, 460, 462, 464.]

2008 showed active Crohn's in some portions of Plaintiff's colon.  [R. 327–28.]    Dr. Wortham decided that Plaintiff should start Humira injections to prevent the progression of her Crohn's.  [R. 328.]

In October 2008, Dr. Wortham indicated Plaintiff was "clinically doing well," and Plaintiff began treatment with Humira.  [R. 370.]  Plaintiff saw Dr. Wortham for follow up in late November 2008, and he indicated that Plaintiff's Crohn's was stable on Humira.  [R. 371.]  Dr. Wortham also noted Plaintiff had recently been in a serious motor vehicle accident.[11]  [*Id.*; *see* R. 268–304 (documenting treatment received incidental to the motor vehicle accident).]

On follow up in February 2009, Plaintiff denied significant nausea, vomiting, or changes in bowel movements, and Dr. Wortham indicated that Plaintiff was doing fairly well with the Humira injections.  [R. 463.]  In June 2009, Plaintiff indicated she had run out of medications and was not taking anything.  [R. 462.]  Dr. Wortham advised Plaintiff to restart her medications and also prescribed Vicodin.  [R. 462.]  In August 2009, Dr. Wortham indicated Plaintiff was having a Crohn's flare-up.  [R. 461.]

In February 2010, Dr. Wortham indicated Plaintiff was "only doing fair" and was still having pain and discomfort.  [R. 457.]  A colonoscopy showed minimally active Crohn's disease.  [R. 395–97.] In March 2010, Plaintiff underwent a laparoscopic-assisted terminal ileal resection—that is, a portion of her small intestine where the Crohn's disease was localized was removed.  [R. 379–87, 393–94.] On discharge, Plaintiff's principal diagnosis

---

[11] A CT scan performed on October 30, 2008, during Plaintiff's hospitalization following the accident, revealed that, since the March 2008 CT scan, "findings suggesting diffuse colitis have resolved."  [R. 286.] However, the physician also noted that a wall of a loop of Plaintiff's small bowel appeared moderately thickened and there was mild dilation of the small bowel proximate to that wall, "in all likelihood due to the patient's known Crohn's disease, possibly with mild/partial small bowel obstruction."  [R. 285.]

was Crohn's disease, with secondary diagnoses of tobacco abuse and anxiety disorder. [R. 379.] In May 2010, Dr. Wortham noted Plaintiff was doing very well since her surgery and directed her to restart Humira injections. [R. 483; *see* R. 466.]

**Weight Assigned to Treating Physician Opinions**

Plaintiff argues the September 2009 opinion of Dr. Wortham and the February 2010 opinion of Dr. Wadee support a finding of disability. [Doc. 14 at 18–20.] Plaintiff contends the Appeals Council failed to give logical or legally sufficient reasons for disregarding Drs. Wortham and Wadee's opinions, specifically arguing the Appeals Council unreasonably rejected the opinions based on the dates they were rendered and failed to adequately support its conclusion that the opinions were inconsistent with the medical evidence. [*Id.* at 21–22.] Plaintiff contends the pattern of exacerbations of her condition illustrates that the record is consistent with her treating physicians' opinions, and the Appeals Council did not explain what evidence was inconsistent with the opinions. [*Id.* at 22; *see* Doc. 20 at 1–6.]

The Commissioner, on the other hand, contends the Appeals Council properly gave the opinions of Drs. Wortham and Wadee little weight because they were dated after the Plaintiff's insured status expired and were inconsistent with the objective medical evidence. [Doc. 18 at 14.] The Commissioner argues Dr. Wortham's September 2009 opinion documented Plaintiff's current functional limitations, not Plaintiff's functional limitations at or before Plaintiff's date last insured—September 30, 2008. [*Id.*] The Commissioner also argues Dr. Wadee's opinion, rendered about one-and-a-half years after Plaintiff's insured status expired, indicated his treatment relationship with Plaintiff was from October 2007

26

through April 2008, less than the twelve months required to establish disability and not a significant longitudinal treatment relationship.  [*Id.* at 14–15.]    Additionally, the Commissioner contends the Appeals Council adequately articulated specific reasons for according little weight to the opinions of Drs. Wortham and Wadee.  [*Id.* at 15–16.]

The Commissioner—or his designate, the ALJ or the Appeals Council—is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).    Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."  *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the Commissioner may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the Commissioner must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires that the Commissioner give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating the adjudicator does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).

Further, although medical opinions from after the date last insured may sometimes be probative to a disability determination, these medical opinions must relate back to the relevant period and offer a retrospective opinion on the past extent of an impairment. *See*

*Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987). "[R]etrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). However, such opinions may be discounted when they are dated long after the date last insured and are inconsistent with other opinions from the relevant period. *Johnson*, 434 F.3d at 656.

Here, the Appeals Council provided the following findings as to the additional evidence from Drs. Wortham and Wadee:

> The Appeals Council finds that these opinions do not impact the denial decision in any significant way as they are dated after the date claimant was last insured and the opinions are inconsistent with the overall, objective medical evidence in the record that indicates the claimant was still able to perform a reduced range of light work during the entire period at issue (June 15, 2005, the date the claimant stated she became unable to work, to September 30, 2008, the claimant's date last insured). The Appeals Council therefore, grants these opinions little evidentiary weight.

[R. 470.] The Appeals Council also indicated that it largely adopted the ALJ's decision, rejecting only the ALJ's finding as to Plaintiff's date last insured and the ALJ's finding that Plaintiff could perform her past relevant work in industrial cleaning. [R. 470–71; *see also* R. 5 (explaining the Appeals Council's rejection of the ALJ's finding as to Plaintiff's date last insured).] Taking the Appeals Council's decision together with the relevant portions

of the ALJ's opinion, the Court concludes the Appeals Council's finding that Drs. Wortham and Wadee's opinions were entitled to little weight is supported by substantial evidence.[12]

### Dr. Wortham's Questionnaire

In September 2009, Dr. Wortham completed a one-page questionnaire form concerning Plaintiff's work-related abilities. [R. 491.] Dr. Wortham opined that, if Plaintiff attempted to work on an eight hour per day, five day per week basis, she would probably (1) have to rest away from the work station for significantly more than an hour during the workday; (2) miss more than three days of work monthly; and (3) have problems with attention and concentration sufficient to frequently interrupt tasks during the workday. [*Id.*] Dr. Wortham indicated Plaintiff's "severe Crohn's disease" was the basis for his opinion, but he was unsure of the date from which Plaintiff had been so impaired and indicated Plaintiff's first visit with him was in August 2008.[13] [*Id.*] Thus, Dr. Wortham opined Plaintiff had limitations that would preclude her from working, but he did not opine that Plaintiff suffered from these limitations prior to September 30, 2008, her date last insured.

Dr. Wortham's treatment notes are inconsistent with the opinion he expressed in the questionnaire. Dr. Wortham's notes show Plaintiff's Crohn's was "under relatively good

---

[12] As stated, evidence that post-dates a claimant's date last insured may be used in a disability determination if it relates to the claimant's condition prior to the date last insured. *See Bird*, 699 F.3d at 341; *Wooldridge*, 816 F.2d at 160. Here, the Appeals Council stated it rejected Drs. Wortham and Wadee's opinions in part because "they are dated after the date claimant was last insured" [R. 470], but the Appeals Council did not elaborate on whether the opinions were related to Plaintiff's condition prior to her date last insured. However, the Appeals Council also rejected the opinions because they were inconsistent with other record evidence, and as explained below, the Court concludes this finding is supported by substantial evidence. Accordingly, because the Appeals Council provided an alternate basis that is supported by substantial evidence, the Court has not addressed whether the Appeals Council properly rejected the opinions because they post-date Plaintiff's date last insured.

[13] The Court notes the record contains medical evidence from Dr. Wortham dating from October 2006. [R. 166–72.] As described in the summary of Plaintiff's medical history, Plaintiff saw Dr. Wortham fairly regularly from October 2006 through September 2009.

control" in April 2007 [R. 211]; she was "overall doing much better . . . than before" in October 2007 [R. 364]; her Crohn's was "not nearly as active as previously seen" in November 2007 [R. 362]; she was gaining some weight in May 2008 [R. 368]; she was "doing fairly well" and was improving overall in July 2008 [R. 369]; she was "clinically doing well" in October 2008 [R. 370]; she "seem[ed] to be doing well from her Crohn's disease" and denied any fever, chills, nausea, vomiting, and diarrhea in November 2008 [R. 371]; she denied significant nausea, vomiting, or changes in bowel movements and was doing "fairly well" with Humira injections in February 2009 [R. 463]; she was "clinically doing well," denied fever, chills, and vomiting, and had a stable increased weight in November 2009 [R. 459]; and in March 2010, her Crohn's was under control in her colon, where her Crohn's had previously been active, and the disease activity seemed to be under control with Humira [R. 486]. The observations expressed in Dr. Wortham's treatment notes, but not in his September 2009 questionnaire responses, were consistent with objective testing, including colonoscopies and CT scans. [*See, e.g.*, R. 224–25, 285–86, 362–63, 395–97.] Thus, substantial evidence supports the Appeals Council's determination that Dr. Wortham's September 2009 opinion is inconsistent with the medical evidence.

### Dr. Wadee's Statement

In a February 2010 statement, Dr. Wadee indicated he treated Plaintiff from October 2007 to April 2008, and he opined that, during this period, Plaintiff was too ill and weak to regularly attend work because of a flare-up of her Crohn's disease and severe iron deficiency anemia. [R. 489.] Dr. Wadee expressed that Plaintiff was "severely ill" during the time Dr. Wadee treated her, and at one time, Dr. Wadee placed Plaintiff in the hospital for inflammation of her colon and severe iron deficiency anemia. [*Id.*] Dr. Wadee stated

that, during the time he treated Plaintiff, she suffered from anemia, weight loss, dehydration, and low sodium, and she appeared emaciated and was significantly undernourished. [*Id.*]   Dr. Wadee also stated, "With Crohn's disease, we can give medications to keep it at bay at [sic] for a while, but it always comes back." [*Id.*]

Dr. Wadee's treatment notes fail to support his February 2010 opinion. On October 10, 2007, Plaintiff's complaints were headaches, throat pain, and difficulty swallowing [R. 501]; on December 20, 2007, Plaintiff saw Dr. Wadee for a check up and complained of coughing [R. 498]; on March 20, 2008, Plaintiff complained of frequent headaches [R. 496]; and on April 3, 2008, Dr. Wadee referred Plaintiff to Dr. Dermer due to excessive bleeding [R. 495].  On two occasions, Dr. Wadee indicated there was "no tenderness" with respect to Plaintiff's abdomen. [R. 496, 501.]  Nowhere in Dr. Wadee's treatment notes does he document "weakness, fatigue, malaise, and abdominal pain stemming from a flare-up of her Crohn's disease." [R. 489 (February 2010 statement).]  Therefore, substantial evidence supports the Appeals Council's determination that Dr. Wadee's February 2010 opinion is inconsistent with the medical evidence.  Accordingly, the Appeals Council's determination of the weight of Drs. Wortham and Wadee's opinions does not provide a basis for reversing the Commissioner's decision.

**Credibility Determination**

Plaintiff argues the ALJ's assessment of Plaintiff's credibility, which was adopted by the Appeals Council, was improper because "the ALJ 'cherry picked' the evidence, ignored the episodic nature of [Plaintiff's] Crohn's disease flares, and mischaracterized some of the evidence." [Doc. 14 at 24.]  Specifically, Plaintiff contends the ALJ noted every instance

where her Crohn's remitted but omitted the exacerbations. [*Id.* at 24–25.] Further, Plaintiff argues the ALJ erred by finding her credibility was undercut by inconsistent hearing testimony regarding when she last worked [*id*. at 25–27] and by mischaracterizing the evidence to find that she failed to follow medical advice regarding taking her medication, quitting smoking, and taking pain medication [*id.* at 27–30; *see* Doc. 20 at 6–9]. The Commissioner contends that Plaintiff, by attempting to explain away inconsistencies in the record, is improperly inviting the Court to reweigh facts. [Doc. 18 at 17.]

Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96-7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the

symptoms. 20 C.F.R. § 1529(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

In this case, the ALJ accepted that Plaintiff's impairments could reasonably have been expected to cause some of her alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. [R. 36.] The ALJ explained the basis for his determination as follows:

> I conclude that the claimant's Crohn's disease, while "severe," is not disabling. The objective evidence of record demonstrates that her Crohn's has significantly improved over time. A June 17, 2007 abdominal CT scan showed thickening of the entire colon, indicative of wide-spread Crohn's disease. A subsequent February 1, 2008 abdominal CT still showed some thickening, but much less. Dr. Wortham stated that a comparison of the two CT's showed the continued presence of Crohn's disease "but considerable improvement." A May 31, 2007 upper GI revealed some Crohn's in the terminal ileum, but less wide-spread in other locations. A May 29, 2007 esophagogastroduodenoscopy was basically normal, with no duodenitis, stomach ulcers or gastric erosions. On November 6, 2007 Dr. Wortham performed another colonoscopy. He was very pleased with Ms. Brown's progress. He asserted that the claimant's Crohn's was only "minimally active." He described it as "not extensive and clearly responsive to treatment." Thus, objective testing clearly shows Ms. Brown's Crohn's disease is quite amenable to treatment and has decreased in severity over time.
>
> Likewise, Dr. Wortham's office visit notes reveal Crohn's resolving over time. On October 20, 2006, he noted the claimant was down to 2 or 3 bowel movements per day, which he characterized as an improvement. On February 7, 2007, Dr. Wortham said the claimant's Crohn's was "under good control." He said her Crohn's was under relatively good control

on April 12, 2007.  Dr. Wortham opined that Ms. Brown was doing much better overall after an office visit of October 10, 2007.  She told him she was only having abdominal pain "at times."  She had gained 5 pounds since her last office visit. After a colonoscopy in November 2007, Dr. Wortham characterized the Crohn's as "not nearly as active as previously seen." Dr. Wortham's January 25, 2008 note stated the last colonoscopy revealed what he termed "very minimal disease."  In April 2008 he described the claimant as stable. In July of 2008 the doctor said she was doing well and had not been experiencing severe pain.  In October and again in November of 2008 Dr. Wortham characterized the claimant as doing well with her Crohn's disease, with it under good control. On September 9, 2008 he characterized the claimant's Crohn's as only "mildly active."

Ms. Brown testified at her hearing that her pain from Crohn's is quite severe.  The evidence of record says otherwise.  By mid-October 2006 Dr. Wortham characterized her pain only as "some" lower abdominal discomfort.  On October 17, 2007 Ms. Brown told the doctor she was doing much better, with lower abdominal pain only "at times."  In January 2008 [t]he claimant had only "some degree" of abdominal discomfort.  As noted above, the claimant was not in severe pain in when Dr. Wortham saw her on July 14, 2008.  On November 20, 2008 the claimant denied nausea, vomiting or diarrhea.  Dr. Wortham's observations are consistent with the objective testing already discussed.  They are consistent with the documented progression of the claimant's Crohn's disease, which the record again and again notes as significantly improved over time.  The claimant is consistently characterized as stable, doing well or in no apparent distress.

As to diarrhea, Ms. Brown testified she has to use the bathroom for bowel movements 6 to 7 time[]s per day.  The record contradicts this.  While Dr. Wortham did indicate the claimant was experiencing diarrhea, abdominal pain and loose stools on October 27, 2006, he prescribed a regimen of medication (Zantac, prednisone and Azulfidine) which helped a lot.  By November 20, 2006 the claimant reported she was having only 2 to 3 bowel movements a day.  The claimant's weight has gone up over time, not down.  This contradicts any allegations of persistent diarrhea.  On October 16, 2007 Dr. Wortham observed that the claimant had gained 5 pounds since her last office visit.  On May 13, 2008, he again noted

35

her weight gain. Ms. Brown denied any diarrhea, nausea or vomiting on November 20, 2008.

The claimant's allegations of severe, intractable and disabling Crohn's disease is undercut by her failure to follow medical advice. In May 2007 the claimant unilaterally stopped taking her Azulfidine. Dr. Wortham explicitly told her to get back on it. On March 11, 2008, Dr. Wortham implored the claimant to stop smoking. He explained to Ms. Brown that smoking cessation was very important in cases of Crohn's and that she would simply have to quit to gain maximum effect of the treatment. However, on September 8, 2008 Dr. Wortham said that Ms. Brown had failed to quit. [O]n that same date, Dr. Wortham told the claimant she was taking way too much pain medication.

All the above, taken in the aggregate, leads me to conclude that Ms. Brown[']s Crohn's disease, while "severe," was not disabling from her alleged onset date through her date last insured. The evidence of record portrays a lessening of symptoms over time. Multiple tests (discussed above) have shown less extensive Crohn's over time, and improvement in nausea, vomiting, diarrhea and pain as admitted by the claimant herself. Ms. Brown's Crohn's disease is not disabling.

***

I find the claimant deficient in credibility. Her allegations of severe and unremitting pain from Crohn's disease are not borne out by the evidence of record. Her allegations of persistent, severe depression are likewise not borne out by the evidence of record. Ms. Brown's credibility is also undercut by her inconsistent hearing testimony: at first she testified that she had not worked since 2006. Later in the hearing, she said she worked for Nutricia in 2007. The claimant's failure to follow medical advice also vitiates her credibility. As noted above, she left Anderson Area Medical Center against medical advice in July of 2005. In May of 2007, she unilaterally stopped taking her Azulfidine against medical advice. She failed to stop smoking though Dr. Wortham repeatedly implored her to do so. In September 2008 Dr. Wortham told her she was taking significantly more prescription pain medication than he had directed. For all these reasons, I find the claimant simply lacking in credibility.

[R. 37–38, 39–40 (emphasis in original) (citations omitted).]  The Appeals Council, on review of the ALJ's decision and on remand from the District Court, determined additional evidence submitted by Plaintiff did not change the ALJ's credibility determination, and the Appeals Council adopted the ALJ's conclusions regarding Plaintiff's subjective complaints. [R. 4, 5, 470, 471.]

The ALJ conducted a proper analysis in determining the credibility of Plaintiff's subjective complaints by fully explaining his decision and citing relevant evidence, and the ALJ's decision is supported by substantial evidence.[14]  For example, in determining Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Plaintiff's subjective complaints in conjunction with her ability to perform activities of daily living and found Plaintiff was able to perform a wide array of activities despite her impairments.  [R. 36; *see* 20 C.F.R. § 404.1529(c)(3)(i) (stating a claimant's daily activities is one factor the ALJ will consider will evaluating a claimant's symptoms, including pain).]  Further, the ALJ noted that Plaintiff's Crohn's disease was amenable to treatment and improved over time. [R. 37, 38.]

---

[14] The Court agrees with Plaintiff that the ALJ incorrectly stated that Plaintiff unilaterally stopped taking the medication Azulfidine.  [*See* R. 38 (discrediting Plaintiff's allegations of disabling Crohn's disease in part because she failed to follow medical advice and giving the example that "[i]n May 2007 the claimant unilaterally stopped taking her Azulfidine").]  Rather, Plaintiff cut back on the amount she was taking because the medication made her groggy.  [R. 212.]  Dr. Wortham advised Plaintiff to take the medication as prescribed and went over the problems associated with not taking medications properly.  [*Id.*]  However, as explained, the ALJ's determination of Plaintiff's credibility is supported by substantial evidence, and therefore, to the extent the ALJ's characterization of this evidence is in error, the Court concludes the error is harmless.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"); *see also Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks and citation omitted)).

However, the ALJ also acknowledged that Plaintiff continues to suffer from some symptoms of Crohn's, and accordingly, the ALJ factored those limitations into his assessment of Plaintiff's RFC.  [R. 40 ("Even though the medical evidence clearly shows that Ms. Brown's Crohn's has gotten less and less severe over time, she still has occasional diarrhea, vomiting and blood in her stool.  This would necessitate 3 or 4 unscheduled bathroom breaks per day, for up to 5 minutes each."); *see also Felton-Miller v. Astrue*, 459 F. App'x 226, 229 (4th Cir. 2011) (per curiam) (unpublished opinion) (holding that, although a treatment note stated the claimant's symptoms were not well controlled with a certain medication and subsequent notes stated the claimant stopped taking other medications, the ALJ's decision was supported by substantial evidence where the ALJ found the claimant's impairment was well controlled with various medications because the record reflected that the claimant's symptoms were well controlled at various times, even though her medication occasionally required adjustment).]  Therefore, the Court concludes the ALJ's credibility determination does not provide a basis for reversing the Commissioner's decision.

**RFC Assessment**

Plaintiff argues the Appeals Council's RFC determination is inadequate because it failed to identify evidence supporting its decision.  [Doc. 14 at 30–31.]  Plaintiff contends there is no opinion evidence supporting the RFC assessment and that there is no medical evidence contradicting her testimony that she was more limited than the ALJ determined.  [*Id.* at 31–32; *see* Doc. 20 at 9–12.]  The Commissioner points out that the Appeals Council adopted the ALJ's discussion of the evidentiary facts and findings as to Plaintiff's RFC, and

38

thus, the Commissioner contends there is adequate discussion of the evidence supporting

the RFC assessment.  [Doc. 18 at 20.]  The Commissioner also argues that a claimant's

RFC is an administrative assessment that the adjudicator bases on all the relevant record

evidence and that Plaintiff failed to meet her burden by pointing to evidence supporting

greater limitations.  [*Id.* at 21–22.]

The Administration has provided a definition of residual functional capacity ("RFC")

and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her
> limitations. RFC is an administrative assessment of the extent
> to which an individual's medically determinable impairment(s),
> including any related symptoms, such as pain, may cause
> physical or mental limitations or restrictions that may affect his
> or her capacity to do work-related physical and mental
> activities. Ordinarily, RFC is the individual's maximum
> remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC
> assessment must include a discussion of the individual's
> abilities on that basis. A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and

footnotes omitted).  The RFC assessment must first identify the Plaintiff's functional

limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20

C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may

RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy.  *Id.*

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all

of a claimant's impairments, including those that are not severe.  *Id.* at 34,477.  While a

non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments. *Id.* If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476. To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

Here, the Appeals Council adopted the ALJ's finding that Plaintiff retained the capacity

> to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand and walk for approximately 6 hours in a regular 8 hour workday, with the claimant being limited to

40

> simple, routine repetitive tasks and needing 3 or 4 unscheduled bathroom breaks per day, for up to 5 minutes each.

[R. 35, 472.] The Appeals Council clarified that, with these limitations, Plaintiff retained the capacity "to perform a reduced range of the light exertional level." [R. 472.]

The record does not contain an opinion from any medical source as to Plaintiff's physical abilities—that is, her ability to sit, stand, walk, lift, carry, push, pull, manipulate, reach, handle, stoop, or crouch. *See* 20 C.F.R. § 404.1545(b) (outlining the physical demands of work activity). The only evidence of Plaintiff's physical abilities was supplied by Plaintiff through her testimony before the ALJ and forms completed by Plaintiff as part of the administrative review process. [R. 56–57 (hearing testimony); *see also* R. 125–26 (describing physical demands of the longest job Plaintiff held), 133–39 (describing demands of Plaintiff's past work), 143 (indicating that since her disabling condition began, Plaintiff has had to change how she completes housework that requires her to stand for a long period of time).] However, Plaintiff's allegations as to how much she can lift, how far or how long she can walk, and how long she can stand and sit were not expressed in terms of how much she can lift frequently and occasionally or how many hours she can walk, stand, and sit out of an eight-hour workday.

The ALJ determined Plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms were not fully credible [R. 36; *see* R. 471 (adopting the ALJ's conclusions as to Plaintiff's subjective complaints)], and as discussed above, this determination is supported by substantial evidence. Moreover, a claimant's RFC is an administrative assessment based on the record evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546; SSR 96-8p, 61 Fed. Reg. at 34,475. Therefore, it was the province of the ALJ

to discard Plaintiff's complaints and determine her RFC based on the totality of the record evidence.

While Plaintiff argues the Commissioner failed to provide evidence to support its RFC finding, it is the a claimant's burden to establish disability in Steps 1 through 4 of the sequential evaluation, *Grant*, 699 F.2d at 191; therefore, Plaintiff bore the burden of establishing her inability to perform work-related activities.  However, Plaintiff has failed to direct the Court to any evidence, other than her testimony—which the ALJ discredited and, as stated, is not clearly contradictory to the ALJ's RFC assessment as to Plaintiff's physical abilities—that would support greater limitations than those assessed by the ALJ.  Further, upon review of the record, the Court concludes the ALJ's RFC assessment is supported by adequate explanation and substantial evidence and, therefore, does not provide a basis for reversing the Commissioner's decision.

While evidence in the record may support a finding in favor of Plaintiff, the Court may not substitute its judgment for the Commissioner's in light of the substantial evidence supporting his determination. *See Craig*, 76 F.3d at 589 (stating that, where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court; the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the Commissioner's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Laws*, 368 F.2d at 642 (holding it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's

42

function to substitute its judgment for that of the Commissioner, so long as the decision is supported by substantial evidence); *Snyder*, 307 F.2d at 520 (same).  Thus, without a showing by Plaintiff that the Commissioner's decision is not supported by substantial evidence, the Court is bound to uphold the decision.

## CONCLUSION AND RECOMMENDATION

Wherefore, based on the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 31, 2013
Greenville, South Carolina